UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AMRO ALSAID and ANDREW HAGGERTY,<br><br>Plaintiffs,<br><br>vs.<br><br>MONOGRAM TECHNOLOGIES INC., BENJAMIN SEXSON, DOUGLAS UNIS, COLLEEN GRAY, PAUL RISS, and RICK VAN KIRK,<br><br>Defendants. | Case No. 25-cv-693 |

**COMPLAINT**

Plaintiffs Amro Alsaid and Andrew Haggerty ("Plaintiffs"), by and through Plaintiffs' attorneys, allege the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiffs, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiffs against Monogram Technologies Inc. ("Monogram" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Monogram, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiffs' claims arise in connection with the proposed acquisition of Monogram by Zimmer

Biomet Holdings, Inc. ("Zimmer" or "Parent").

2. On or about July 11, 2025, Monogram entered into an agreement and plan of merger, (the "Merger Agreement"), whereby Zimmer will acquire Monogram (the "Proposed Transaction") and shareholders of Monogram common stock will receive, in exchange for each share of Monogram common stock they own, $4.04 in cash (the "Upfront Consideration") and one contingent value right representing the right to receive payments of up to $12.37 upon the achievement of specified milestones (the "CVR" and together with the Upfront Consideration, the "Merger Consideration").

3. On or about August 7, 2025, in order to convince Monogram's shareholders to support the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the Securities and Exchange Commission ("SEC"). As detailed below, the Proxy Statement contains materially incomplete and misleading information concerning the financial fairness of the Proposed Transaction and the valuation analyses that were performed in connection with the fairness opinion that was provided by the Company's financial advisor, Wells Fargo Securities, LLC ("Wells Fargo").

4. The special meeting of Monogram shareholders (the "Special Meeting") will be scheduled and the definitive proxy statement that will be used to solicit stockholders' final votes will be disseminated to Monogram's shareholders in the coming days. It is imperative that the material information that has been omitted from the Proxy Statement be disclosed immediately so public stockholders may make an informed determination as to how to respond when they receive the forthcoming definitive proxy statement.

5. For these reasons, and as set forth in detail herein, Plaintiffs seek to enjoin

Defendants from taking further steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Monogram's shareholders, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Vigman*, 764 F.2d at 1316.

8. Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b)(2) because Defendants are subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to the claim occurred, as Parent is headquartered in this District. Further, upon information and belief, shareholders of Monogram reside in this District and Defendants were aware that the Proxy Statement would be reviewed in

this District. *See Sarantakis v. Gruttadauria*, No. 02 c 1609, 2003 U.S. Dist. LEXIS 4002, at *23 (N.D. Ill. Mar. 17, 2003) ("Venue is appropriate in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district."); *see also Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 197 (E.D. Pa. Mar. 6, 1974) ("Venue will be sustained in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district, even if the defendant never has been physically present in that district."); *Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90, 106 (10th Cir. 1971) (finding venue proper in the District of Utah where the defendant released a false and fraudulent press statement that was printed in the Wall Street Journal that was circulated in Salt Lake City, Utah).

**PARTIES**

9. Plaintiff Alsaid is, and has been continuously throughout all times relevant hereto, an owner of Monogram common stock.

10. Plaintiff Haggerty is, and has been continuously throughout all times relevant hereto, an owner of Monogram common stock.

11. Defendant Monogram is a Delaware corporation, and an AI-driven robotics company focused on improving human health with an initial focus on orthopedic surgery, and is developing a product solution architecture to enable patient-optimized orthopedic implants at scale by combining 3D printing, advanced machine vision, AI, and next-generation robotics. Monogram's common stock trades on the Nasdaq Capital Market (the "Nasdaq") under the ticker symbol "MGRM."

12. Defendant Benjamin Sexson ("Sexson") is the Company's President, Principal Executive Officer, Chief Executive Officer, and a director of the Company.

13. Defendant Douglas Unis ("Unis") is a director of the Company.

14. Defendant Colleen Gray ("Gray") is a director of the Company.

15. Defendant Paul Riss ("Riss") is a director of the Company.

16. Defendant Rick Van Kirk ("Van Kirk") is a director of the Company.

17. The defendants identified in paragraphs 11 through 15 are collectively referred to as the "Individual Defendants" or the "Board."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Proposed Transaction**

18. Defendant Monogram is a Delaware corporation, and an AI-driven robotics company focused on improving human health with an initial focus on orthopedic surgery, and is developing a product solution architecture to enable patient-optimized orthopedic implants at scale by combining 3D printing, advanced machine vision, AI, and next-generation robotics.

19. Monogram has an FDA cleared surgical robot that can execute specialized paths for high precision insertion of implants in simulated cadaveric surgeries, and intends to produce and market robotic surgical equipment and related software, orthopedic implants, tissue ablation tools, navigation consumables, and other miscellaneous instrumentation necessary for reconstructive joint replacement procedures.

20. Monogram has obtained 510(k) clearances for certain implants and has obtained 510(k) premarket clearance for its first-generation robotic system for which its implants are designed.

**The Proposed Transaction and the Materially Incomplete and Misleading Proxy Statement**

21. On or about July 14, 2025, Monogram and Zimmer issued a joint press release to announce the Proposed Transaction, stating in part:

**Zimmer Biomet Announces Definitive Agreement to Acquire Monogram Technologies, Expanding Robotics Suite with Autonomous Solutions**

*Proposed transaction creates the broadest, most flexible portfolio of orthopedic robotics and navigation technologies to meet surgeons' needs*

*Acquisition expected to be neutral to adjusted earnings per share in 2025 – 2027 and accretive thereafter and to contribute to revenue growth beginning in 2027*

WARSAW, Ind. and AUSTIN, Texas, July 14, 2025 / PRNewswire / -- Zimmer Biomet Holdings, Inc. (NYSE and SIX: ZBH), a global medical technology leader, and Monogram Technologies Inc. (NASDAQ: MGRM), an orthopedic robotics company, today announced they have entered into a definitive agreement for Zimmer Biomet to acquire all outstanding shares of stock of Monogram for an upfront payment of $4.04 per share in cash, corresponding to an equity value of approximately $177 million and an enterprise value of approximately $168 million. Monogram common stockholders will also receive a non-tradeable contingent value right (CVR) entitling the holder to receive up to $12.37 per share of common stock in cash if certain product development, regulatory and revenue milestones are achieved through 2030. The respective boards of directors of Zimmer Biomet and Monogram have unanimously approved the proposed transaction.

Monogram's semi- and fully autonomous robotic technologies are expected to add new and differentiated capabilities to expand Zimmer Biomet's flagship ROSA® Robotics platform and broad suite of navigation and enabling technologies. Monogram has developed a CT-based, semi-autonomous, AI-navigated total knee arthroplasty (TKA) robotic technology, which received FDA 510(k) clearance in March 2025 and is expected to be commercialized with Zimmer Biomet implants in early 2027. Additionally, Monogram is developing a fully autonomous version of the technology with the potential to significantly increase safety, efficiency and outcomes, as well as additional applications beyond TKA. Upon closing of the proposed transaction, Zimmer Biomet expects to have a clear pathway to become the first and only company in orthopedics to offer a fully autonomous surgical robot.

"Monogram's technology is a major leap forward, demonstrating our commitment to becoming the boldest and broadest innovator in surgical robotics and navigation," said Ivan Tornos, Chairman, President and Chief Executive Officer of Zimmer Biomet. "Upon closing, our customer-centric portfolio will consist of the most comprehensive and flexible technology ecosystem to support the varying preferences of a vast array of surgeons – now and into the future. With Monogram's proprietary technology, Zimmer Biomet has the potential to become the first company to deliver fully autonomous capabilities and redefine both the standard of care and the future of orthopedic surgery."

The proposed transaction expands Zimmer Biomet's extensive suite of orthopedic robotics, enabling solutions and analytics to address the needs of surgeons pre-,

intra- and post-operatively. Zimmer Biomet's broad portfolio features imageless robotics through its ROSA platform; a licensed CT-based handheld robot; mixed reality navigation; AI-based surgical navigation; and a pathway to advanced semi- and fully autonomous robotics capabilities. Increasingly, Zimmer Biomet is uniquely positioned to solve for the diverse preferences of a wide range of surgeons globally and address multiple styles of surgical techniques, such as CT and non-CT; robotic and non-robotic; and manual, surgeon-centered methods or semi- or fully autonomous technologies.

The ROSA platform, which is the cornerstone of Zimmer Biomet's robotics offering, is rapidly approaching 2,000 installations worldwide and is a market leader outside of the United States. Zimmer Biomet is committed to continuing to advance the ROSA platform and is investing in a robust R&D pipeline featuring several new product and software applications expected between now and 2027. This includes ROSA Knee with OptimiZe, which has been submitted to the FDA and 510(k) clearance is anticipated later this year, as well as ROSA Posterior Hip and the full commercial launch of ROSA Shoulder.

“Since our inception, we have been singularly focused on advancing orthopedic robotics with technology designed to safely, efficiently and accurately support surgeons with total knee arthroplasty,” said Benjamin Sexson, Chief Executive Officer of Monogram. “We are thrilled by the opportunity to add our technology to Zimmer Biomet's leading portfolio of surgical robotics, navigation solutions and trusted implants and to benefit from their deep industry expertise and global scale.”

Zimmer Biomet plans to fund the proposed transaction through a combination of cash on the balance sheet and other available debt financing sources. Zimmer Biomet expects to maintain a strong balance sheet and to continue to support its stated capital allocation priorities.

Zimmer Biomet believes this proposed transaction and the CVR structure is compelling from both a strategic and financial standpoint. The acquisition of Monogram further strengthens Zimmer Biomet's capabilities in robotics, one of the fastest growing segments within orthopedics. Zimmer Biomet expects the acquisition will contribute to revenue growth in 2027 and beyond by improving the Company's robotic knee adoption in the U.S., increasing share of wallet through reaching new customers with a broader product range, and expanding the Company's industry-leading global knee offerings.

Zimmer Biomet anticipates the acquisition will be neutral to adjusted earnings per share in 2025, 2026 and 2027, and accretive in 2028 and beyond. Additionally, the transaction is projected to generate high-single digit return on invested capital (ROIC) by year five, with an increasing contribution thereafter.

> Closing of the proposed transaction is subject to receipt of required regulatory approvals, approval by Monogram's common stockholders and other customary closing conditions, and the merger is anticipated to close later this year.
>
> **Advisors**
>
> Morgan Stanley & Co. LLC is serving as exclusive financial advisor to Zimmer Biomet and Hogan Lovells US LLP is serving as legal advisor.
>
> Wells Fargo Securities, LLC is serving as exclusive financial advisor to Monogram and Duane Morris LLP is serving as legal advisor.

22. On or about August 11, 2025, in order to solicit approval to consummate the Proposed Transaction from the public shareholders, the Board authorized the filing of the materially incomplete and misleading Proxy Statement with the SEC.

23. The Proxy Statement describes the material financial analyses that Wells Fargo performed in a materially incomplete and misleading manner.

24. Because Wells Fargo provided a fairness opinion with the respect to the Proposed Transaction, federal regulations required that the Proxy Statement provide a clear, accurate, and fair summary of Wells Fargo's fairness opinion, which "must include, but need not be limited to, the procedures followed; the findings and recommendations; the bases for and methods of arriving at such findings and recommendations; instructions received from the subject company or affiliate; and any limitation imposed by the subject company or affiliate on the scope of the investigation." *See* 17 C.F.R. §§ 229.1015(b), 240.14a-3(a)(1), 240.14a-9, 240.14a-101 Item 14(b)(6).

25. The Proxy Statement indicated, among other things, that Wells Fargo calculated the present value of additional consideration potentially attributable to one CVR of $8.87:

> ***Summary of Financial Analyses of Wells Fargo***
>
> The following is a summary of the material financial analyses performed by Wells Fargo in connection with its oral opinion and the preparation of its written opinion to the Board, provided as of July 11, 2025. The following summary is not a complete description of the financial analyses performed and factors considered

      > by Wells Fargo in connection with its opinion, nor does the order of analyses described represent the relative importance or weight given to those analyses. Except as otherwise noted, the following quantitative information, to the extent that it is based on market data, is based on market data as it existed on or before July 11, 2025. Assessing any portion of such analyses and of the factors reviewed, without considering all analyses and factors, could create a misleading or incomplete view of the process underlying Wells Fargo's opinion.
>
> For purposes of its financial analysis and opinion, Wells Fargo observed that the merger consideration for each share of Company common stock consisted of $4.04 in cash and one CVR, and compared ranges of value for the Company indicated by its analyses with the per share cash amount of $4.04 and the implied per share merger consideration amount of $8.87 (the "discounted consideration amount"), which was derived by adding to the per share cash amount of $4.04, the present value of additional consideration potentially attributable to one CVR of $8.87 (calculated by discounting to the present value, as of June 30, 2025, the probability-weighted milestone payments of up to $12.37 (based on the milestone estimates), utilizing a discount rate of 22.5%, reflecting the midpoint of the estimated range of the Company's cost of capital). In addition, for purposes of deriving values per share of Company common stock, Wells Fargo utilized and relied upon the estimated fully diluted shares of Company common stock provided by the management of the Company.

Proxy Statement at 58-59.

26. The Proxy Statement also indicated that Wells Fargo performed a discounted cash flow analysis based on Monogram's standalone cash flow projections and compared the value implied by its discounted cash flow analysis to the $4.04 cash consideration and the discounted consideration amount of $8.87 per share of Company common stock.

27. Upon information and belief, the Proxy Statement is materially incomplete and misleading because it greatly overstates the present value of the CVR payments, which makes the Merger Consideration appear much more favorable than it actually is.

28. The Proxy Statement indicates that Wells Fargo calculated "the present value of additional consideration potentially attributable to one CVR of $8.87 (calculated by discounting to the present value, as of June 30, 2025, the probability-weighted milestone payments of up to $12.37

(based on the milestone estimates), utilizing a discount rate of 22.5%, reflecting the midpoint of the estimated range of the Company's cost of capital)."

29. Upon information and belief, the $8.87 amount that Wells Fargo calculated is not "the present value of additional consideration potentially attributable to one CVR" but the ***combined*** value of the $4.04 per share Upfront Consideration, plus the present value of additional consideration potentially attributable to one CVR, which Wells Fargo calculated to be approximately $4.43.

30. Upon information and belief, the statement that Wells Fargo calculated "the present value of additional consideration potentially attributable to one CVR of $8.87" is materially false because it misleads investors as to the financial fairness of the Proposed Transaction by dramatically overstating the value of the CVR and the Merger Consideration as a whole.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

48. Plaintiffs incorporate each and every allegation set forth as if fully set forth herein.

49. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

50. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and

in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

51. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

52. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the misleading Proxy, which attempts to minimize the number of shares voting against the Proposed Transaction.

53. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

54. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual

Defendants were required to, separately, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

55. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligent, recklessness, or intentional conduct.

56. The Company is also deemed negligent, reckless, or intentional as a result of the Individual Defendants' intent in preparing and reviewing the Proxy.

57. The misrepresentations and omissions in the Proxy are material to Plaintiffs, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiffs have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiffs be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

58. Plaintiffs incorporate each and every allegation set forth as if fully set forth herein.

59. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and

dissemination of the various statements that Plaintiffs contend are materially incomplete and misleading.

60. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

62. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate

result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

65. Plaintiffs have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiffs be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or taking any steps to consummate the Proposed Transaction, until the Company issues curative disclosures that fully address the deficiencies in the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiffs rescissory damages;

C. Directing the Defendants to account to Plaintiffs for all damages sustained as a result of their wrongdoing;

D. Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 13, 2025

**ADEMI & FRUCHTER LLP**

By: */s/ John D. Blythin*
John D. Blythin (IL SBN 6281648)
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel. 414-482-8000
Fax 414-482-8001
jblythin@ademilaw.com

*Attorneys for Plaintiff*

**OF COUNSEL**

**ADEMI & FRUCHTER LLP**
Guri Ademi (*pro hac vice forthcoming*)
Shpetim Ademi (*pro hac vice forthcoming*)
Jesse Fruchter (*pro hac vice forthcoming*)
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel. 414-482-8000
Fax 414-482-8001
gademi@ademilaw.com
sademi@ademilaw.com
jfruchter@ademilaw.com

*Attorneys for Plaintiff*